493 So.2d 437 (1986)
Francisco J. MANRIQUE, Inversiones Continentales, N.V., a Foreign Corporation, and Argoville Corporation, N.V., a Foreign Corporation, Petitioners,
v.
Giorgio FABBRI, Respondent.
No. 67,770.
Supreme Court of Florida.
August 21, 1986.
Lewis M. Kanner and Augustine de Goytisolo of Trenam, Simmons, Kemker, Scharf, Barkin, Frye and O'Neill, P.A., Miami, for petitioners.
Manuel A. Reboso of Sams, Ward, Newman & Lovell, P.A., Miami, for respondent.
BARKETT, Justice.
We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. The decision of the court below, Manrique v. Fabbri, 474 So.2d 844 (Fla. 3d DCA 1985), expressly conflicts with the decision in Maritime Limited Partnership *438 v. Greenman Advertising Associates, Inc., 455 So.2d 1121 (Fla. 4th DCA 1984).
Fabbri, an Italian citizen living in Buenos Aires, established the Argoville Corporation in the Netherlands Antilles, the principal asset of which is a single parcel of property in Dade County, Florida. He subsequently sold the company to Continentales, another Netherlands Antilles corporation. The sale was effectuated through several contracts, including a stockholder's settlement agreement and an option agreement. These agreements specifically contemplated the possibility of a future dispute. The stockholder's settlement agreement provided:
The laws of the Netherlands Antilles shall control in case of any such conflict or dispute between the parties to this agreement, who submit themselves to that jurisdiction... .
The option agreement contained an addendum executed by the parties in Spanish. In its English version, the agreement provided:
The laws of the Netherlands Antilles shall govern and control in case of any conflict among the parties who expressly submit themselves to the venue and jurisdiction of the Courts of the Netherlands Antilles.[1]
A dispute indeed occurred, and Fabbri sued Continentales for breach of contract in Dade County, Florida. Continentales moved to dismiss for lack of jurisdiction, relying on the provisions quoted above pertaining to disputes. The trial court denied the motion to dismiss. The Third District Court of Appeal upheld that denial and reaffirmed its prior decisions on the question in Zurich Insurance Co. v. Allen, 436 So.2d 1094 (Fla. 3d DCA 1983), review denied, 446 So.2d 100 (Fla. 1984), Sausman Diversified Investments, Inc. v. Cobbs Co., 208 So.2d 873 (Fla. 3d DCA 1968), and Huntley v. Alejandre, 139 So.2d 911 (Fla. 3d DCA), cert. denied, 146 So.2d 750 (Fla. 1962).
Beginning with its decision in Huntley, the Third District Court of Appeal has consistently held that contractual provisions requiring that future disputes be resolved in specified foreign jurisdictions are void as impermissible attempts to oust Florida of subject matter jurisdiction. On the other hand, the Fourth District in Maritime has held that parties to a contract may agree to submit to the jurisdiction of a chosen forum provided that (1) the forum was not chosen because of one party's overwhelming bargaining power; (2) enforcement would not contravene public policy; (3) the purpose of such an agreement is not to transfer a local dispute to a remote and alien forum in order to inconvenience one or both of the parties.
In Maritime, the Fourth District relied upon and adopted the reasoning of the United States Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In Zapata, a German corporation (Unterweser) contracted with Zapata, an American corporation, to tow an oil rig across the Atlantic Ocean to Italy. The contract provided: "Any dispute arising must be treated before the London Court of Justice.'" Id. at 2, 92 S.Ct. at 1909. The rig was damaged in transit and towed to Tampa. Zapata, notwithstanding such provision, instituted proceedings for damages against Unterweser in the United States District Court, Middle District of Florida. The district court denied Unterweser's motion to dismiss, and the Court of Appeals affirmed in In re Unterweser Reederei, GmbH, 428 F.2d 888 (5th Cir.1970), and 446 F.2d 907 (5th Cir.1971) (en banc). The United States Supreme Court reversed and held that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable *439 under the circumstances. In Zapata, the Court rejected the same policy position adopted by the Third District in the case presently before us, saying:
The argument that such clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals. No one seriously contends in this case that the forum-selection clause "ousted" the District Court of jurisdiction over Zapata's action. The threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause.
407 U.S. at 12, 92 S.Ct. at 1914.
The Supreme Court gave compelling reasons why a freely negotiated private agreement unaffected by fraud, undue influence, or overweening bargaining power should be given full effect. It noted that at the very least such clauses represent efforts to eliminate uncertainty as to the nature, location, and outlook of the forum in which parties of differing nationalities might find themselves. Moreover, such clauses might be vital parts of agreements fixing monetary terms, with the consequences of the forum clause figuring prominently in the parties' calculations. The Court concluded:
The correct approach would have been to enforce the forum clause specifically unless [the party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.
Id. at 15, 92 S.Ct. at 1916.
The view articulated by the Court in Zapata enables freely contracting parties to conduct their interstate and international business affairs more efficiently. As stated by the court in Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc., 320 N.W.2d 886, 889 (Minn. 1982), "forum selection clauses provide a degree of certainty to business contracts by obviating jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation."[2] Because the Zapata rule is based on a realistic assessment of modern commercial culture, and because the rule enhances contractual predictability within that culture, it is not surprising that it is rapidly becoming a majority view.[3]
The opposite view is apparently premised on the belief that a choice of forum provision constitutes an impermissible attempt to divest a court of its lawful authority to review a given case. Forum selection clauses, however, do not "oust" courts of their jurisdiction. They merely present the *440 court with a legitimate reason to refrain from exercising that jurisdiction. As the California Supreme Court noted in Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles County, 17 Cal.3d 491, 495, 551 P.2d 1206, 1209, 131 Cal. Rptr. 374, 377 (1976):
While it is true that the parties may not deprive courts of their jurisdiction over causes by private agreement (see Rest.2d Conflict of Laws, § 80, com. a), it is readily apparent that courts possess discretion to decline to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum.
We reject the position espoused by the Third District and adopt the view enunciated in Zapata and Maritime. Florida courts should recognize the legitimate expectations of contracting parties. The trial courts of this state can effectively protect a party by refusing to enforce those forum selection provisions which are unreasonable or result from unequal bargaining power. We hold that forum selection clauses should be enforced in the absence of a showing that enforcement would be unreasonable or unjust.[4] Accordingly, we quash the decision of the district court below and, to the extent they conflict with our holding herein, disapprove Zurich Insurance Co. v. Allen, 436 So.2d 1094 (Fla. 3d DCA 1983), review denied, 446 So.2d 100 (Fla. 1984), Sausman Diversified Investments, Inc. v. Cobbs Co., 208 So.2d 873 (Fla. 3d DCA 1968), and Huntley v. Alejandre, 139 So.2d 911 (Fla. 3d DCA), cert. denied, 146 So.2d 750 (Fla. 1962). Finally, we remand with directions that the matter be returned to the trial court for proceedings consistent herewith.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] The district court opinion failed to consider the addendum despite the parties' agreement that the document was duly executed and that the English translation set forth herein is accurate. After a careful reading of both provisions, we find that they represent a choice of forum, not merely a choice of law.
[2] We note that the contractual provision at issue in Hauenstein required that future disputes be resolved in the courts of Dade County, Florida.
[3] For authorities endorsing the Zapata view, see, e.g., Volkswagenwerk, A.G. v. Klippan, GmbH, 611 P.2d 498 (Alaska), cert. denied, 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980); Societe Jean Nicolas Et Fils v. Mousseux, 123 Ariz. 59, 597 P.2d 541 (1979); Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles County, 17 Cal.3d 491, 551 P.2d 1206, 131 Cal. Rptr. 374 (1976); ABC Mobile Systems, Inc. v. Harvey, 701 P.2d 137 (Colo. App. 1985); Funding Systems Leasing Corp. v. Diaz, 34 Conn. Supp. 99, 378 A.2d 108 (C.P. 1977); Datamatic Services Corp. v. Bescos, 484 So.2d 1351 (Fla. 2d DCA 1986); Reeves v. Chem Industrial Co., 262 Or. 95, 495 P.2d 729 (1972); St. John's Episcopal Mission Center v. South Carolina Dep't of Social Services, 276 S.C. 507, 280 S.E.2d 207 (1981); Green v. Clinic Masters, Inc., 272 N.W.2d 813 (S.D. 1978); Rest. (2d) Conflict of Laws, § 80 com. a (1971); Rest. (2d) Foreign Relations Law of the United States (Revised), § 492 (2)(f), com. h and reporters' n. 5 (Tent. Draft No. 4, 1983); 15 Wright, Miller & Cooper, Federal Practice & Procedure, § 3803 (1976 & Supp. 1983); 1 Moore's Fed. Practice, ¶ 0.140 [1.-3-2], (1986).
[4] We emphasize that the test of unreasonableness is not mere inconvenience or additional expense. See Societe Jean Nicolas Et Fils v. Mousseux, 123 Ariz. 59, 597 P.2d 541 (1979). As noted by the Court in Zapata:

[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.
407 U.S. at 18, 92 S.Ct. at 1917.